# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-1028
_____

| | |
|---|---|
| Walton General Contractors, Inc./Malco Steel, Inc., | * |
| | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Chicago Forming, Inc.; | * |
| Peerless Insurance Company, | * |
| | * |
| Appellees. | * |

_____

| | | |
|---|---|---|
| Chicago Forming, Inc., | * | |
| | * | |
| Third Party Plaintiff, | * | Appeals and Cross-Appeals |
| | * | from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| United States Fidelity and | * | |
| Guaranty Company, | * | |
| | * | |
| Third Party Defendant. | * | |

_____

No. 96-1324
_____

| | |
|---|---|
| Walton General Contractors, Inc./Malco Steel, Inc., | * |
| | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Chicago Forming, Inc.; | * |
| | * |
| Appellant, | * |
| | * |
| Peerless Insurance Company, | * |
| | * |
| Appellee. | * |

_____

Chicago Forming, Inc.,                  *
                                        *
Third Party Plaintiff-Appellant,*
                                        *
      v.                                *
                                        *
United States Fidelity and              *
Guaranty Company,                       *
                                        *
Third Party Defendant-Appellee. *


          _____

          No. 96-1326
          _____


Walton General Contractors,     *
Inc./Malco Steel, Inc.,                 *
                                        *
          Appellee,                     *
                                        *
      v.                                *
                                        *
Chicago Forming, Inc.,                  *
                                        *
          Appellee,                     *
                                        *
Peerless Insurance Company,             *
                                        *
          Appellant.                    *
_____

Chicago Forming, Inc.,                  *
                                        *
          Third Party Plaintiff,*
                                        *
      v.                                *
                                        *
United States Fidelity and              *
Guaranty Company,                       *
                                        *
          Third Party Defendant.*


-2-

Submitted:  December 9, 1996

Filed:  April 22, 1997

Before WOLLMAN, BRIGHT and MURPHY, Circuit Judges.

BRIGHT, Circuit Judge.

These appeals bring to this court a dispute between a contractor (Walton General Contractors, Inc./Malco Steel, Inc.), its subcontractor (Chicago Forming, Inc.), and the subcontractor's surety (Peerless Insurance Company).  Initially, the contractor claimed that the subcontractor's delayed and defective performance caused the general contractor damages in excess of the agreed amount remaining due and owing under the subcontract, $352,408.  The contractor sought a declaratory judgment determining its proper withholding under the subcontract and joined the subcontractor's surety because the contractor's claim exceeded the unpaid balance of the subcontract.  Subsequently, the subcontractor filed a counterclaim for the full subcontract balance of $352,408.

A magistrate judge presided over the jury trial, resolved the post-trial motions and entered judgments regarding the controversy.  The magistrate made the following awards:

1.  According to the jury's findings, the subcontract entitled the contractor to withhold $233,629 for damages resulting from the subcontractor's delayed and defective performance.  This award was less than the contractor initially claimed as damages.

2.    According to the jury's findings, the subcontractor substantially performed the subcontract and, therefore, was entitled to the full $352,408 subcontract balance subject to the contractor's damages withholding discussed in item 1 above.  The magistrate judge, therefore, ordered the contractor to pay the $118,779 difference between the two awards.

3.    The magistrate judge granted the subcontractor prejudgment interest on $352,408 calculated from May 7, 1993, when the subcontractor demanded payment.

4.    Although the subcontract included a provision entitling the prevailing party to attorneys' fees, the magistrate judge denied both the contractor's and the subcontractor's motions for attorneys' fees.

5.    The magistrate judge dismissed the subcontractor's surety from the damages portion of the trial because the contractor reduced its damages claim below the subcontract balance of $352,408 shortly before trial, but retained jurisdiction over the surety for purposes of determining attorneys' fees.  After the trial, the magistrate judge awarded the surety $148,726.24 in attorneys' fees against the subcontractor pursuant to their performance bond.

The parties appealed from the judgments and awards, and raise the following issues for our review:

1.    The contractor claims that the subcontractor was not entitled to credit for excusable delays during the subcontract performance and, consequently, the magistrate judge erred by admitting the subcontractor's evidence of excusable delays.  We reject the contractor's argument because the contractor introduced

-4-

evidence that the subcontractor caused the delays and, thereby, opened the door for the subcontractor to submit rebuttal evidence.

2. The contractor claims that the magistrate judge erred by instructing the jury on the issue of substantial performance on the subcontractor's counterclaim. The contractor contends that the subcontractor offered insufficient evidence of substantial performance to warrant the instruction. In addition, the contractor asserts that the instructions failed to inform the jury that the subcontractor could not substantially perform with respect to the subcontract's provisions requiring the subcontractor to provide a ten-day notice of excusable delays. We reject both of these arguments and affirm the magistrate judge's choice and form of jury instructions.

3. The contractor claims the subcontract entitled the contractor to judgment as a matter of law against the subcontractor on the counterclaim because the subcontract authorized the contractor to withhold funds, even excessive amounts, without breaching the terms of the subcontract. We reject this claim. The parties' pleadings and presentation of evidence required the jury's determination on the appropriateness of the contractor's withholding of payment and the amount to which the contractor could withhold.

4. The contractor disputes the award of prejudgment interest granted to the subcontractor. We agree that the magistrate judge erroneously granted prejudgment interest to the subcontractor for the full amount of the subcontract balance without offsetting the contractor's damages.

5.    The contractor and subcontractor appeal the magistrate judge's denial of their motions for attorneys' fees pursuant to the subcontract. We agree with the magistrate judge's decision because both parties breached the subcontract and, therefore, the subcontract entitled neither party to recover attorneys' fees.

6.    The subcontractor claims that the magistrate judge erred by granting the surety attorneys' fees without determining whether the fees were reasonable. We reject this claim because the subcontractor fails to demonstrate that the magistrate judge abused his discretion.

7.    The surety argues that the contractor, rather than the subcontractor, bears the liability for the surety's attorneys' fees according to the subcontract and because the contractor brought its claim against the surety in bad faith. We conclude that the subcontract creates no obligation on the part of the contractor to reimburse the surety for its litigation costs and that the contractor brought its claim in good faith. Accordingly, we reject both of the surety's arguments.

8.    The surety claims that its performance bond agreement with the subcontractor entitles the surety to reimbursement of $20,000 it paid to settle a claim against the subcontractor by one of its suppliers. The contractor also claims that the subcontract entitles it to withhold $30,010 until the subcontractor provides the requisite waiver from the supplier of its claim. We remand both of these claims to the magistrate judge because the parties never raised them appropriately below. The facts appear to be undisputed.

Our discussion of each of these issues follows.

## I.    BACKGROUND

In 1992, Kansas City, Missouri entered into a construction contract with the contractor to build a convention center expansion.  The contractor then entered into a subcontract with the subcontractor for $1,560,000 to build four cement pylons used to support the roof of the convention center. The subcontract required the subcontractor to obtain a surety to issue a bond in the contractor's favor guaranteeing the subcontractor's performance and payment of its suppliers.   The performance bond between the subcontractor and surety incorporated the subcontract.

During the construction project, the contractor believed the subcontractor performed defective and untimely work.  The contractor, therefore, began withholding payments from the subcontractor and at the time of trial, $352,408 of the subcontract remained unpaid.  The contractor claimed it withheld $49,297 as retainage[1] because the subcontractor had work to complete, defects in the subcontractor's work placed the contractor at risk of further liability, and Kansas City had not accepted the work or paid the contractor.  The subcontract authorized the contractor to withhold as much as ten percent retainage from each progress payment.

In addition to retainage, the contractor withheld $30,010 allegedly to protect itself from a potential claim for payment by one of the subcontractor's suppliers (Continental Steel & Conveyor Company).   The contractor believed the subcontractor did not pay the supplier.   The subcontract authorized the contractor to

---

[1]Retention is money withheld from payment until completion and acceptance of a construction project to insure that the subcontractor completes its work.

withhold payment until the subcontractor demonstrated that it paid all of its suppliers.  Sometime after the trial, the subcontractor's surety paid the supplier $20,000 in settlement of its claim against the subcontractor.

Finally, the contractor claimed it withheld $319,398 as compensation for damages resulting from the subcontractor's breach of the subcontract. The contractor claimed the following amounts as damages:  $151,102 due to the subcontractor's deficient work, $45,624 caused by the subcontractor's failure to perform work according to specifications, $51,087 of additional overtime costs, and $60,094 resulting from the subcontractor's failure to perform in a timely manner.  Thus, the contractor claimed the subcontract entitled it to withhold the entire $352,408 subcontract balance as retainage, security for the supplier's claim and compensation for damages.

The contractor brought this diversity action against the subcontractor and its surety, seeking a declaratory judgment that the subcontractor breached the subcontract, thereby entitling the contractor to $352,408 in damages.  This sum represents the full extent of the unpaid balance on the subcontract.  The contractor also sought attorneys' fees from the subcontractor and the surety pursuant to the subcontract.  The subcontractor filed a counterclaim against the contractor for payment of the $352,408 subcontract balance, additional damages and attorneys' fees. Finally, the surety filed a cross-claim against the subcontractor for attorneys' fees pursuant to the performance bond agreement and a counterclaim against the contractor for any of the subcontractor's rights under the performance bond or the subcontract.  All the parties agreed to have a magistrate judge preside over the litigation.

The subcontractor completed its portion of the construction by the time of trial, but the parties disputed the quality of the work. The convention center construction as a whole, however, was not complete. Shortly before trial, the contractor reduced its claim for damages from $352,408 to $319,907. Because the contractor claimed damages in an amount less than the remaining subcontract balance, the magistrate judge dismissed the surety from the liability portion of the lawsuit. The magistrate judge, however, retained jurisdiction over the surety for purposes of assigning liability for costs, attorneys' fees and expenses. In addition, the magistrate judge limited the subcontractor's damages to the $352,408 remaining under the subcontract or less. Finally, the parties agreed to submit the issue of attorneys' fees to the magistrate judge's discretion.

The jury returned one verdict in favor of the contractor on its claim against the subcontractor for $233,629 in damages caused by delays and defects in the subcontractor's work. The jury returned another verdict for the subcontractor on its claim for payment against the contractor in the amount of $352,408. This sum represented the undisputed amount remaining unpaid under the subcontract. The magistrate judge also awarded the subcontractor prejudgment interest on the entire $352,408 subcontract balance. The contractor filed motions for judgment as a matter of law and for a new trial, but the magistrate judge denied both motions.

The subcontract entitled the "prevailing party" to recover attorneys' fees, costs and expenses. The contractor sought $232,458.50 in attorneys' fees and $6,718.58 in expenses from the subcontractor and the surety. Likewise, the subcontractor sought approximately $155,000 in attorneys' fees and expenses from the contractor. The magistrate judge denied both parties' motions for

attorneys' fees, but awarded the surety $148,726 in attorneys' fees against the subcontractor.[2]

## II.  DISCUSSION

This diversity case raises several issues that require us to apply Missouri's substantive law "as we think the highest court of Missouri would."  See Havens Steel Co. v. Randolph Eng'g Co., 813 F.2d 186, 188 (8th Cir. 1987).  We review the magistrate judge's determination of state law and the application of that law to the facts de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

### A.  Evidentiary Issues

The subcontractor failed to timely complete its work, but introduced evidence that certain delays were excusable because of bad weather.  The contractor contends that the magistrate judge erroneously admitted the evidence.  According to the subcontract, "Any claims by Subcontractor for an extension of time to complete the Work must be submitted in writing for General Contractor's consideration not more than ten (10) calendar days after commencement of the alleged cause of the delay or it will be forever waived."  Appellant App. at 516 (containing subcontract).  The contractor contends that state courts strictly enforce contract provisions requiring notice even if such enforcement seems unconscionable.  Walton Br. at 22-23 (citing Southwest Eng'g Co. v. Reorganized Sch. Dist. R-9, 434 S.W.2d 743, 750 (Mo. Ct. App. 1968)); see also Steinberg v. Fleischer, 706 S.W.2d 901, 904-05

---

[2]The amount of time spent on this case reflected in the attorneys' fees demonstrates that this controversy was one for compromise and settlement rather than litigation.

(Mo. Ct. App. 1986). Thus, the contractor contends that the subcontractor's failure to provide written notice of excusable delay combined with its failure to timely complete its work rendered the subcontractor's performance not excusable under the subcontract. The contractor, therefore, claims that the subcontractor's evidence of excusable delays was irrelevant and prejudicial.

We review a magistrate judge's decision to admit evidence for abuse of discretion. Lamb Eng'g & Constr. v. Nebraska Pub. Power Dist., 103 F.3d 1422, 1432 (8th Cir. 1997). "Furthermore, we will not disturb a jury's verdict 'absent a showing that the evidence was so prejudicial as to require a new trial which would be likely to produce a different result.'" Id. (quoting O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200 (8th Cir. 1990)); see also Fed. R. Evid. 403.

According to the magistrate judge, the evidence of excusable delays remained relevant "not necessarily to liability[,] but rather to the jury's determination of the amount of [the contractor's] damages and the amount of those damages legally attributable to [the subcontractor]." Appellant App. at 179 (Jan. 31, 1995 Dist. Ct. Order). In addition, the magistrate judge admitted the evidence because the contractor offered testimony alleging that it claimed damages for delays caused by the subcontractor, see Tr. Vol. VI at 71-76, and thereby opened the door for the subcontractor to offer rebuttal evidence. Appellant App. at 179 (Jan. 31, 1995 Dist. Ct. Order). Finally, the magistrate judge determined that the contractor suffered no harm from the evidence because "the jury unquestionably awarded [the contractor] the damages for delays assigned to [the subcontractor] by [the contractor]." Id.

We agree with the magistrate judge.  The contractor offered testimony that it calculated its claim for damages due to delay of performance based on delays caused by the subcontractor.  See Tr. Vol. VI at 71-76.  By offering evidence that the subcontractor caused certain delays, the contractor opened the door for the subcontractor to offer rebuttal evidence.  Although the rebuttal evidence failed to excuse the delays, it challenged the credibility of the contractor's calculations.  Cf. United States for and on behalf of Cannon Air Corp. v. National Homes, 581 F.2d 157, 163 (8th Cir. 1978) (concluding that district court did not abuse its discretion by admitting rebuttal evidence that would otherwise appear prejudicial).  Accordingly, the magistrate judge did not abuse its discretion by admitting the subcontractor's evidence of weather delays.

**B.  Jury Instructions**

The contractor also challenges the magistrate judge's jury instructions to render a verdict in the subcontractor's favor on its counterclaim if the subcontractor substantially performed under the contract.  See Appellant App. at 508 (Jury Instruction No. 9).  The contractor argues that, as a matter of law, the subcontractor's performance was insufficient to support its claim.  The contractor also argues that the magistrate judge failed to instruct the jury that certain provisions of the subcontract, such as the notice provisions discussed in Part A, required complete performance.

The form of the jury instructions is a procedural matter governed by federal law.  H.H. Robertson Co. v. V.S. DiCarlo Gen. Contractors, 950 F.2d 572, 576 (8th Cir. 1991).  A federal court exercising its diversity jurisdiction is not required to give the precise instruction set out in the Missouri Approved Instructions

-12-

(MAI) but, rather, retains broad discretion to instruct the jury so long as the form and language of the instructions provide a fair and adequate presentation of the state law.  Id.  Thus, "We will not reverse for instructional error unless the instruction, read as a whole, failed to fairly and adequately present the relevant state law."  Id. at 577.

We believe the subcontractor offered sufficient evidence that it substantially performed under the contract to warrant the magistrate judge's instruction.  The subcontractor introduced evidence that the four cement pylons, the subject of the subcontract, were complete and adequate for their intended purpose despite alleged defects.  See Tr. Vol. VII at 193-94 (including testimony that concrete pylons contain no structural problems although potential for maintenance problems exists).  In addition, although a federal court is not bound to instruct the jury with state instructions, the magistrate judge chose to use MAI 26.07.  The Committee Comment to MAI 26.07 advises courts to use that instruction "where recovery is sought on a building contract," and state law regards the instruction as particularly appropriate in construction contract disputes because "it is highly unusual for a project to be completed in exact accordance with the original plans and specifications."  See Lindsey Masonry Co. v. Jenkins & Assoc., 897 S.W.2d 6, 13 (Mo. Ct. App. 1995).  The magistrate judge's use of the state's instruction fairly and adequately presented the relevant state law to the jury.  Thus, we conclude that the magistrate judge did not err in its decision to submit the substantial performance instruction or in the form of the instruction.

**C. Judgment as a Matter of Law**

The contractor next argues that the magistrate judge erroneously denied the contractor's motion for judgment as a matter of law on the subcontractor's counterclaim.[3] According to the contractor, the subcontract's unambiguous language entitled the contractor to withhold the subcontractor's payment and, therefore, the contractor never breached the subcontract. Specifically, the contractor contends that the award of almost $234,000 in damages, the supplier's $30,000 claim for payment and the subcontract's authorization of retainage demonstrate that the contractor acted within its contractual rights and, therefore, did not breach the contract as a matter of law.

We review de novo the magistrate judge's decision to deny the contractor's motion for judgment as a matter of law. See Lamb Eng'g & Constr. Co., 103 F.3d at 1430. "A court should not set aside a jury's verdict lightly . . . ." Nicks v. Missouri, 67 F.3d 699, 704 (8th Cir. 1995). A court should grant a motion for judgment as a matter of law if "the nonmoving party has presented insufficient evidence to support a jury verdict in [its] favor, and this is judged by viewing the evidence in the light most favorable to the nonmoving party and giving [it] the benefit of all reasonable inferences from the evidence, but without assessing credibility." Abbott v. City of Crocker, 30 F.3d 994, 997 (8th Cir. 1994) (citation omitted). Furthermore, we review the magistrate judge's decision to deny judgment as a matter of law

---

[3]The contractor properly motioned for judgment as a matter of law at the close of the evidence pursuant to Fed. R. Civ. P. 50(a), see Tr. Vol. X at 43, and renewed its motion after the jury returned its verdict pursuant to Fed. R. Civ. P. 50(b). See Appellant App. at 177 (Jan. 31, 1995 Dist. Ct. Order).

-14-

with deference to the jury's verdict.  See Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1121 (8th Cir. 1996).

After reviewing the record, we agree with the magistrate judge's conclusion that "the jury was presented with sufficient evidence to support a verdict for both plaintiff and defendant on their respective claims." Appellant App. at 178 (Jan. 31, 1995 Dist. Ct. Order).  The subcontractor offered sufficient evidence, when viewed in the light most favorable to the subcontractor, that the contractor breached its obligation to pay amounts due under the subcontract.  The contractor admitted it withheld $352,408, despite claiming only $319,907 in damages.  Furthermore, the subcontractor introduced evidence that it completed the four cement pylons without significant structural problems.  See Tr. Vol. VII at 193-94.

Thus, the evidence demonstrated that the subcontractor substantially performed its contractual obligations, and that the contractor breached its contractual obligation to pay amounts owed to the subcontractor. Accordingly, we affirm the magistrate judge's denial of the contractor's motion for judgment as a matter of law.

### D.  Prejudgment Interest

The contractor contends that the magistrate judge erroneously awarded the subcontractor prejudgment interest based on the entire $352,408 subcontract balance.  State law provides that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum . . . for all moneys after they become due and payable, on written contracts." Mo. Rev. Stat. § 408.020 (1979).  The magistrate judge ordered the contractor to pay prejudgment interest

on the subcontractor's $352,408 award commencing on May 7, 1993, which is thirty days after the subcontractor demanded payment. See Appellant App. at 189 (Dec. 5, 1995 Dist. Ct. Judgment), and decided not to offset the contractor's damages when calculating the subcontractor's prejudgment interest because "[a]n offset . . . would have the practical effect of awarding prejudgment [interest] on the [contractor's] award." Appellant App. at 191 (Nov. 27, 1995 Dist. Ct. Order).

The contractor argues that the subcontractor was not entitled to any prejudgment interest because the amount due to the subcontractor was not fixed or ascertainable until the jury determined the extent of the contractor's damages. In the alternative, the contractor argues that the magistrate judge erred by calculating prejudgment interest based on the subcontractor's entire award without first offsetting the contractor's $233,629 in damages. According to the contractor, the subcontract never entitled the subcontractor to receive $233,629 and, therefore, the magistrate judge should not award prejudgment interest for amounts that never became due under the subcontract.

State law governs issues of prejudgment interest. Total Petroleum, Inc. v. Davis, 822 F.2d 734, 738 (8th Cir. 1987) (citing California & Hawaiian Sugar Co. v. Kansas City Terminal Warehouse Co. Inc., 788 F.2d 1331, 1333 (8th Cir. 1986)). Missouri provides for prejudgment interest only if "the trial court finds the amount indisputably due under the contract. In order to be liquidated as to bear interest a claim must be fixed and determined or readily determinable . . . ." Mel-Lo Enters., Inc. v. Belle Starr Saloon, Inc., 716 S.W.2d 828, 829-30 (Mo. Ct. App. 1986) (citations omitted). Missouri courts consider a claim liquidated when the parties fix the amount due by agreement. Huffstutter v. Michigan

Mut. Ins. Co., 778 S.W.2d 391, 394-95 (Mo. Ct. App. 1989). "It is also well settled under Missouri law that the fact that a defendant interposes counterclaims, setoffs, recoupment, or defenses does not alter the fact that the amount claimed by the plaintiff is 'ascertainable,' even though the amount of the defendant's counterclaim, setoff, or recoupment may not itself be reasonably ascertainable." St. Joseph Light & Power Co. v. Zurich Ins. Co., 698 F.2d 1351, 1356 (8th Cir. 1983); see also Huffstutter, 778 S.W.2d at 395 ("The existence of a bona fide dispute as to the amount owed does not preclude recovery of interest." (citation omitted)).

The jury's award reflected a fixed and determined amount because both parties agreed that $352,408 remained unpaid under the subcontract. Although the contractor raised a bona fide dispute as to the amount due in light of the subcontractor's defective performance, that dispute fails to preclude the subcontractor's recovery of prejudgment interest subject to any offset.

The contractor, however, properly contests the amount of prejudgment interest awarded by the magistrate judge. According to this court's recent decision in Gateway Western Ry. Co. v. Morrison Metalweld Process Corp., 46 F.3d 860 (8th Cir. 1995), "[I]n computing prejudgment interest, a judgment for amounts due under a contract must be reduced by the other party's offsetting recovery under a counterclaim for breach of the same contract, including any recovery of consequential or special damages." Id. at 864 (emphasis added) (discussing Herbert & Brooner Constr. Co. v. Golden, 499 S.W.2d 541 (Mo. Ct. App. 1973)); see also Solter v. P.M. Place Stores, Co., 748 S.W.2d 919, 922 (Mo. Ct. App. 1988) ("[T]he existence of a setoff or counterclaim will not prevent the recovery of interest on the *balance* of the demand . . . ."

(emphasis in original)).  Although the Missouri Supreme Court has not addressed the issue, we believe it would follow this rule.  See Gateway Western Ry. Co., 46 F.3d at 864.  Accordingly, we reverse and remand to the magistrate judge with instructions to enter an award of prejudgment interest in favor of the subcontractor based on the $118,779 difference between the subcontractor's award and the contractor's damages, less properly withheld retainage of $35,240.80.[4]

### E.  Prevailing Party

The contractor and the subcontractor both argue that the magistrate judge erred by failing to award attorneys' fees.  According to the subcontract, "If any party to this Agreement is required to seek the services of an attorney to enforce any provisions of this Agreement, the prevailing party shall be entitled to recover its costs, expenses and reasonable attorneys' fees incurred . . . ."  Appellant App. at 516.  The magistrate judge, however, declined "to find either party a 'prevailing party' and enforce an attorneys' fee clause in the contract both parties saw fit to breach."  Appellant App. at 183 (Jan. 31, 1995 Dist. Ct. Order).

On appeal, the contractor argues that it prevailed on the "significant" issues of the litigation because the jury determined that the subcontractor breached the subcontract and awarded the

---

[4]See supra at 7 (discussing subcontract provision regarding retainage).  No prejudgment interest is due on ten percent of the final payment which can be withheld until Kansas City accepts the contractor's performance.  Accordingly, the magistrate judge shall determine any prejudgment interest on retention as of the date Kansas City accepted the project, rather than the date the subcontractor demanded payment.

-18-

contractor the greater share of the subcontract balance in damages. On cross-appeal, the subcontractor contends that Missouri law favors a "net judgment rule." CFI Br. at 11 (citing <u>Solter</u>, 748 S.W.2d at 923). Because the jury awarded the contractor $233,629 and the subcontractor $352,408, the magistrate judge entered a net judgment in the subcontractor's favor for $118,779. The subcontractor argues that this favorable net judgment demonstrates that it prevailed at trial and, therefore, is entitled to attorneys' fees.

We agree with the magistrate judge's conclusion that the parties intended the attorneys' fees provision of the subcontract to provide an additional remedy for a nonbreaching party. Both parties, however, breached the subcontract. Thus, we affirm the magistrate judge's decision to deny the requests for attorneys' fees.

### F. Reasonableness of Attorneys' Fees Awarded

On cross-appeal, the subcontractor challenges the magistrate judge's award of attorneys' fees to the surety pursuant to the performance bond. The subcontractor made no objections to the amount of the surety's attorneys' fees before the magistrate judge, <u>see generally</u> Dist. Ct. Doc., but now contends that the magistrate judge failed to determine the reasonableness of the surety's attorneys' fees. We review the magistrate judge's decision to award attorneys' fees for abuse of discretion and its factual findings control unless they are clearly erroneous. <u>See</u> <u>Pinkham v. Camex, Inc.</u>, 84 F.3d 292, 294 (8th Cir. 1996). "The amount of an award of attorney's fees rests within the sound discretion of the court and we will not disturb it absent clear abuse of that discretion." <u>Litton Microwave Cooking Products v. Leviton Mfg.</u>

<u>Co.</u>, 15 F.3d 790, 796 (8th Cir. 1994).  Assuming, arguendo, that the subcontractor preserved its objection to the amount of the surety's attorneys' fees, it failed to demonstrate that the magistrate judge abused his discretion.  Thus, we affirm the magistrate judge's award of attorneys' fees in favor of the surety.

## G.  Liability for Payment of Attorneys' Fees Under Performance Bond

On cross-appeal the surety argues that it constituted a prevailing party under the subcontract as incorporated by the surety bond and, therefore, liability for its attorneys' fees falls on the contractor instead of the subcontractor.  In the alternative, the surety argues that the magistrate judge mistakenly refused to award the surety attorneys' fees against the contractor because the contractor brought its claim against the surety in bad faith.  We reject both of these arguments.

The contractor was not a party to the performance bond entered between the subcontractor and the surety and, therefore, owed no contractual obligation under the bond to the surety.  Although the surety's obligations under the bond run toward the contractor, the reverse is not true.  Essentially, the subcontractor paid the surety to guarantee the contractor that the subcontractor would perform.  Although the subcontractor and surety decided to incorporate the subcontract, that decision did not affect the rights of the contractor or any other non-party to the bond.

In addition, we disagree with the surety's assertion that the contractor brought its claim in bad faith.  Although the magistrate judge appropriately granted the surety judgment as a matter of law on the contractor's claim for damages because the contractor's

claim failed to exceed the amount the contractor withheld from the subcontractor, see Appellant App. at 177 (Jan. 31, 1995 Dist. Ct. Order), the magistrate judge retained jurisdiction over the surety for purposes of determining liability for attorneys' fees. See Peerless Br. at 10. As a result, although the contractor failed to raise a claim for damages against the surety, the contractor's claim for attorneys' fees was reasonable and not in bad faith. Accordingly, we affirm the magistrate judge's decision to order the subcontractor, rather than the contractor, to pay the surety's attorneys' fees.

### H.  Indemnity Rights of Surety

Finally, the surety requests that this court increase its judgment against the subcontractor to compensate the surety for paying the supplier $20,000 to settle the supplier's claim against the subcontractor. The surety claims that its performance bond with the subcontractor entitles the surety to reimbursement. The subcontractor admits that the surety, on behalf of the subcontractor, settled the supplier's claim for $20,000, CFI Br. at 6; CFI Reply Br. at 10, but the parties never provided the magistrate judge with an opportunity to rule on this issue. Accordingly, we remand this issue for further proceedings in accordance with the seemingly undisputed facts presented by the parties.

In addition, the contractor argues that the subcontract entitles the contractor to withhold $30,010 from the subcontractor's judgment as security until the subcontractor provides an unconditional waiver or release of lien by the supplier. See Appellant's App. at 516. The court record, however, appears to contain such a release of the supplier's claim against

the contractor. <u>See</u> Appellee Chicago Forming App. at 26. Because the contractor's claim appears to question whether the surety settled the supplier's claim, we refer the matter to the magistrate judge to resolve in conjunction with the surety's claim for indemnification.

**III. CONCLUSION**

For the above-mentioned reasons, we affirm in part, reverse in part and remand the case to the magistrate judge for further proceedings in accordance with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.